IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS L. CRAMER, JR. | ) |
| Plaintiff, | ) Civil Action No. 10-125E |
| v. | ) |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) |

## OPINION

### *Introduction*

Pending before this court is an appeal from the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying the claims of Thomas L. Cramer ("Plaintiff" or "claimant") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 401 et. seq. and Supplemental Security Income ("SSI") under Title XVI of the SSA, 42 U.S.C. §§ 1381 et. seq. Plaintiff argues that the decision of the administrative law judge ("ALJ") should be reversed and the Commissioner directed to award Plaintiff benefits because the ALJ's determination is not supported by substantial evidence and he is entitled to DIB and SSI benefits. To the contrary, Defendant argues that the decision of the ALJ is supported by substantial evidence and, therefore, the ALJ's decision should be affirmed. The parties have filed cross motions for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. The Court will deny Plaintiff's motion for summary judgment and grant Defendant's motion for summary judgment because we find that the decision of the ALJ is supported by substantial evidence.

***Procedural History***

Plaintiff protectively filed for DIB and SSI on July 11, 2007, (R. at 104), claiming that he became disabled and unable to work after August 15, 2005 due to "severe depression, bipolar/anger problems, recovering drug addict, left knee injury with constant pain, and hepatitis C. (R. at 104). Plaintiff's claims were initially denied at the initial phase of the administrative review process. (R. at 65).

A hearing before the ALJ was held on October 21, 2008; Plaintiff appeared at the hearing with counsel and testified. (R. at 22-50). At the time of the hearing, Plaintiff was thirty-one (31) years old. (R. at 20, 87). Thus, he was a "younger individual" pursuant to 20 C.F.R. §§ 404.1563(c), 416.963(c). (R. at 87). He testified that he has an eleventh grade education. (R. at 87). He also testified that he has past relevant work experience as a full-time certified nurse assistant ("CNA"), a position which required him to supervise other employees. (R. at 106, 113). A vocational expert ("VE"), George J. Starosta, also testified at the hearing. (R. at 45-49). He testified as to the availability of positions for an individual with medium exertion, light exertion and a sedentary work level in the national and regional economies. (R. at 45-47). At the administrative hearing, Plaintiff testified that he stopped working in 2005 after having surgery for a torn rotator cuff and torn cartilage in his knee. (R. 27).

In his decision, dated December 19, 2008, (R. at 13-21), the ALJ determined that Plaintiff is not under a disability within the meaning of the SSA. (R. at 21). Additionally, the ALJ determined that Plaintiff had the following severe impairments: intermittent explosive disorder, major depressive disorder with psychosis, post traumatic stress disorder, anxiety disorder, bipolar disorder, and a history of substance abuse. (R. at 15). However, the ALJ further found that none

of these impairments meet or medically equal one of the Listed Impairments found in the SSA, 20 C.F.R. Part 404, Subpart P, Appendix 1, (R. at 15-16), and that Plaintiff has the residual functional capacity ("RFC") to perform a limited range of sedentary work including only simple, routine, repetitive tasks, limited interaction with the public, co-workers, and supervisors, and not involving arbitration, negotiation, consultation and supervision. (R. at 16-17). The ALJ further found that Plaintiff has the RFC to perform such work except for certain physical limitations which are not at issue here. (R. 16). On March 17, 2010, the Appeals Council denied Plaintiff's request to review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (R. at 1-4). Plaintiff filed a Motion for Leave to Proceed in forma pauperis on May 21, 2010. (ECF #1). The Court granted the Motion on May 25, 2010 (ECF #2) and Plaintiff's Complaint was filed on May 25, 2010, seeking judicial review of the ALJ's determination by this Court. (ECF #3).

### *Plaintiff's Medical History Pertaining to his Physical Health Complaints*

We note that in his appeal the plaintiff asserts only that the ALJ erred with respect to his evaluation of Plaintiff's mental impairment, and therefore, plaintiff has waived any argument that he was disabled due to any other physical impairment. Knepp v. Apfel, 204 F.3d 78, 84 (3d Cir. 2000). See Pl.'s B. at 15-21.

### *Plaintiff's Medical History Pertaining to his Mental Health Complaints*

Between December 29, 2005 and January 12, 2006, Plaintiff received in-patient treatment at Turning Point Chemical Dependency Treatment Center for drug addiction. (R. 243). He showed "satisfactory progress" during his stay, and over time, as treatment progressed he

"became more accepting, open, and honest" and was an active participant in all scheduled activities and followed treatment plans and recommendations. (R. 243). He was discharged with staff approval to a lower level of care with a recommendation that he attend intensive outpatient treatment at Turning Point, attend AA/NA meetings, as well as obtain a home group and a sponsor. (R. 243).

On January 25, 2006, Plaintiff visited Seneca Medical Center to follow up on his depression and substance abuse. (R. 299). He was instructed to continue taking Effexor. (R. 299). On October 25, 2006, he again visited Seneca Medical Center and stated that he was "here to get disability forms filled out. Also would like to discuss recovery time." (R. 298). He was instructed to continue taking Effexor and to continue with Narcotics Anonymous meetings. (R. 298). He returned to Seneca Medical Center on November 15, 2006 and admitted that he had "started using [heroin] again, would like to go to methadone clinic for help." (R. 297). After he indicated which prescriptions had not helped, he reported that "Effexor works!" and was referred to a methadone clinic with his Effexor prescription continued. (R. 297).

Plaintiff was seen by Gerard F. Kenney at Digestive Health Specialists in June of 2007 and August of 2007. (R. 239, 240). Dr. Kenney indicated he had "normal mood/affect." (R. 239, 240).

In July of 2007, Plaintiff was again seen at Seneca Medical Center as a "follow up with SSI" at which time he was given samples of Cymbalta (R. 293). The following month, on August 16, 2007, after reporting that the Cymbalta was "working well" he was told to continue taking it. (R. 292). On September 19, 2007, Plaintiff returned to Seneca Medical Center to discuss, among other things, his "disability papers.' (R. 290). His Cymbalta prescription was

continued. (R. 290). On October 3, 2007, Plaintiff was given Cymbalta samples in varying concentrations. (R. 289). On November 6, 2007, he returned again to Seneca Medical Center and reported that he wanted a referral to Paoletta Psychological Services, after having failed in his attempt to get in there on his own. (R. 288).

On November 7, 2007, Plaintiff visited Paoletta and reported that he had been suffering mood swings, anxiety, and depression. (R. 353). He also listed the following symptoms: sleeping a lot (or alternatively, not sleeping), not keeping up with activities of daily living, poor hygiene, lack of interest, and poor appetite. (R. 353). He listed as stressors "lots of appointments; trying to get disability; living on medical assistance; has to go to methadone clinic 3 times [per] week." (R. 353). On mental status examination he was described as being engaged, friendly, unimpaired, having a blunt affect, moderately depressed mood, with logical and appropriate thoughts, average intelligence and adequate insight. (R. 362). He was diagnosed with major depressive disorder, single episode, moderate, and a secondary diagnosis of opioid dependence on agonist therapy. (R. 363-64). His Global Assessment of Functioning (GAF) score was 45. (R. 364).

On February 4, 2008, Plaintiff was again seen at Seneca Medical Center complaining of earache, ear pain, muscle pain and spasm. He also reported depression and mood changes, but denied anxiety. (R. 286). He had not been taking Cymbalta for two weeks because he ran out; he was given additional samples. (R. 286). He was described as being healthy and well developed, appearing to weigh within a normal range and showed no signs of acute distress. (R. 286).

Plaintiff returned to Paoletta on February 6, 2008, and was seen by Gerard R. Francis, M.D. (R. 351). He reported that he has had problems with moods swings for many years and that he had tried Paxil, Wellbutrin, Effexor, and Lexapro with little benefit. (R. 351). He reported that the Cymbalta was helping with depression but that he was experiencing mood swings nevertheless. (R. 351). Plaintiff further stated that he was having difficulty staying asleep. (R. 351). Dr. Francis diagnosed Plaintiff with bipolar disorder not otherwise specified, opioid dependence on methadone maintenance, and anxiety disorder not otherwise specified; his GAF score was 55. (R. 352. He rated his mood at seven out of ten, with a blunt affect, organized and goal directed thoughts, and average insight, judgment and impulse control. (R. 352). Dr. Frances also noted that he was cognitively alert, awake, oriented times three. (R. 352). Dr. Francis prescribed Cymbalta and Abilify and recommended that Plaintiff continue with his therapy with Tara Milner at Paoletta. (R. 352). Dr. Francis noted that the Cymbalta dosage would be continued daily with a view to reducing it if his moods stabilize. (R. 352).

On March 5, 2008, Plaintiff visited Seneca Medical Center with concerns about his cholesterol and seeking a referral to a urologist. (R. 283). He was seen by Norman K. Beals, III, M.D. He reported a weight gain of over 100 pounds in one year. (R. 283). He was described as pleasant, worried, moderately overweight, with no signs of apparent distress. (R. 284). He was assessed as having a mood disorder but was not prescribed any medication or treatment for it. (R. 284-85). On March 26, 2008 he returned to Seneca Medical Center "for a check up and to have form filled out for Domestic Relations." (R. 280). He was seen by a nurse who noted that he was currently taking Cymbalta. (R. 280). On April 11, 2008, he returned to Seneca Medical Center complaining of an earache and sore throat. (R. 278).

### *Plaintiff's Consultative Examinations*

Plaintiff saw Peter Nachtwey, Ph.D. for a psychological consultative examination on September 20, 2007. (R. 244). Plaintiff also saw Martin Myer, Ph.D. and Julie Uran, Ph.D. for a consultative examination on July 21, 2008. (R. 365).

Plaintiff drove himself to the appointment with Dr. Nachtwey and was cooperative throughout the evaluation, although there were times when he hesitated giving responses (R. 244). He reported that he suffered from "nerves," did not want to go out in public and did not want to deal with people." (R. 244). Dr. Nachtwey described him as appearing tense and that he occasionally shifted his position, had a flat affect with no change in facial expression but for one smile during the evaluation. (R. 244). When asked to describe his mood, he responded, "My girlfriend says I am snappy, and I guess I am." (R. 244). Plaintiff reported that he plays with the kids but that in general, he does not want to do anything and that it takes an hour to get out of bed. (R. 249). Dr. Nachtwey also observed a continuous and productive stream of thought without language impairment; he also noted furtive eye contact. (R. 246, 247). Dr. Nachtwey noted "[t]here was an emphasis on his symptoms of depression and reclusiveness." (R. 247). He was oriented to person, place and time and reported missing appointments and not being able to remember if he had eaten or not. (R. 247).

Dr. Nachtway diagnosed Plaintiff with agoraphobia without history of panic disorder; major depressive disorder, recurrent, moderate with melancholic features; relational problems; intermittent explosive disorder (rule out); opioid dependence on agonist therapy; and borderline personality disorder. (R. 248). Dr. Nachtwey opined that Plaintiff would have moderate limitations in his ability to understand and to remember and carry out instructions. (R. 251). He

also opined a marked limitation in ability to understand and remember detailed instructions, carry out detailed instructions, and make judgment son simple work-related decisions. (R. 251). He also opined that Plaintiff would have marked limitations in his ability to interact appropriately with the public, supervisors, co-workers, and marked limitations in his ability to respond appropriately to work pressures in a usual work setting and changes in a routine work setting. (R. 251). With respect to Plaintiff's substance abuse history, Dr. Nachtwey noted that "at one time he had a successful career as a CNA. There is a possibility he could return to that occupation. However, he suffers from hepatitis C and this may be a factor to consider." (R. 252.)

At the July 21, 2008 consultative examination with Drs. Meyer and Uran, both psychologists at Vocational & Psychological Services, Plaintiff reported he was currently trying to obtain his GED. (R. 365). Plaintiff reported daily activities of sleeping, caring for his children and beginning housework without completion. (R. 366). Plaintiff further noted that he had been diagnosed with depression and anxiety and cited symptoms of depression as being mild to severe with loss of appetite and increase in sleeping. (R. 366). He stated that he experienced crying, withdrawal and amotivation as well as lack of care for himself or others and that his anxiety is moderate and nearly constant. (R. 366). He reported hallucinatory activity and obsessive thoughts of his weight and others' perception of him. (R. 366-67). He reported easy loss of concentration and difficulty sleeping. (R. 367.) His affect was described as flat. (R. 367). Drs. Meyer and Uran diagnosed Plaintiff with intermittent explosive disorder, major depressive disorder with psychosis, post-traumatic stress disorder, anxiety disorder, bipolar disorder, alcohol dependence in remission, sedative dependence in remission, and assessed his

GAF score as 50. (R. 370) They noted functional limitations in the following areas: impulsivity, psychosis, mood instability, poor ability interacting with others to include authority, coworkers and unknown individuals and anxiety. (R. 369) They recommended continued individual counseling focusing on mental health symptomology, and continued psychiatric medication monitoring. (R. 369).

### *Standard of Review*

The Congress of the United States provides for judicial review of the Commissioner's denial of a claimant's benefits. 42 U.S.C. § 405(g). This court must determine whether or not there is substantial evidence which supports the findings of the Commissioner. 42 U.S.C. §405(g). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389 (1971)). This deferential standard has been referred to as "less than a preponderance of evidence but more than a scintilla." Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). This standard, however, does not permit the court to substitute its own conclusions for that of the fact-finder. Id.; Fargnoli v. Massonari, 247 F.3d 34, 38 (3d Cir. 2001) (reviewing whether the administrative law judge's findings "are supported by substantial evidence" regardless of whether the court would have differently decided the factual inquiry).

### *Discussion*

Under Title II of the SSA, the term "disability" is defined as the:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months...

9

42 U.S.C. §§416(i)(1)(A); 423(d)(1)(A); 20 C.F.R. 404.1505. A person is unable to engage in substantial activity when he:

> is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. ...

42 U.S.C. §423(d)(2)(A).

In determining whether a claimant is disabled under the SSA, a five-step sequential evaluation process must be applied. 20 C.F.R. §404.1520. See McCrea v. Commissioner of Social Security, 370 F.3d 357, 360 (3d Cir. 2004). The evaluation process proceeds as follows. At step one, the Commissioner must determine whether the claimant is engaged in substantial gainful activity for the relevant time periods; if not, the process proceeds to step two. 20 C.F.R. §404.1520(a)4(i). At step two, the Commissioner must determine whether the claimant has a severe impairment. §404.1520(a)(4)(ii). If the Commissioner determines that the claimant has a severe impairment, it must then determine whether that impairment meets or equals the criteria of an impairment listed in 20 C.F.R., part 404, subpart p, Appx. 1. §404.1520(a)(4)(iii). If the claimant does not have an impairment which meets or equal the criteria, at step four the Commissioner must determine whether the claimant's impairment or impairments prevent her from performing her past relevant work. §404.1520(a)(4)(iv). If so, the Commissioner must determine, at step five, whether the claimant can perform other work which exists in the national economy, considering her residual functional capacity and age, education and work experience. §404.1520(a)(4)(v). See also McCrea, 370 F.3d at 360; Sykes v. Apfel, 228 F.3d 269, 262-63

(3d Cir. 2000).

In this case, the ALJ determined that the plaintiff's intermittent explosive disorder, major depressive disorder with psychosis, post traumatic stress disorder, anxiety disorder, bipolar disorder, and history of substance abuse were severe impairments. (R. 15). He specifically noted that the plaintiff's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, and 12.08 (R. 16). Yet despite these impairments, the ALJ determined that Plaintiff retained the capacity to perform a limited range of sedentary work including only simple, routine, repetitive tasks; limited interaction with the public, co-workers and supervisors; and not involving arbitration, negotiation, consultation, and supervision. (R. 16-17). Based on the vocational expert's testimony, the ALJ found that Plaintiff could perform jobs that existed in significant numbers in the national economy, and therefore was not disabled under the Act. (R. 20-21).

"'Residual Functional Capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001) (quoting Burnett v. Commissioner of Social Security, 220 F.3d 112, 121 (3d Cir. 2000)) (quotations omitted); 20 C.F.R. §404.1525(a)(1). In determining a claimant's RFC, all of the claimant's impairments, including those not considered "severe" must be considered. 20 C.F.R. §404.1545(a)(2). Additionally, the ALJ is required to consider all of the evidence before him -- including both the medical evidence and the claimant's subjective complaints and evidence of activity level -- in making a determination regarding a Plaintiff's RFC. Burnett, 220 F.3d at 121 (citing Plummer, 186 F.3d at 429; Doak v. Heckler, 790 F.2d 26, 29 (3d Cir. 1986)). See also Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983); Fargnoli v. Massanari, 247

11

F.3d 34, 41 (3d. Cir. 2001) (holding that the ALJ must consider all evidence including "medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others").

### 1. *Whether the ALJ Erroneously Evaluated the Medical Evidence*

As the finder of fact, the ALJ is required to review, properly consider and weigh all of the medical records provided concerning the claimant's claims of disability. Fargnoli, 247 F.3d at 42 (citing Dobrowolsky v. Califano, 606 F.2d 403, 406-07 (3d Cir.1979)). "In doing so, an ALJ may not make speculative inferences from medical reports." Plummer, 186 F.3d at 148 (citing Smith v. Califano, 637 F.2d 968, 972 (3d Cir.1981)). Indeed, the ALJ may not substitute his own opinions for the opinions of an examining physician. Id. (citing Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985)). When the medical evidence of records conflicts, "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Id. (citing Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir.1993)). Moreover, the ALJ must consider all the evidence and give some reason for dismissing the evidence he chooses to reject. Id. (citing Stewart v. Secretary of H.E.W., 714 F.2d 287, 290 (3d Cir.1983)).

Treating physicians' reports should be accorded great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir. 1987); 20 C.F.R. § 404.1527(d)(2).

> Under applicable regulations and the law of this Court, opinions of a claimant's treating physician are entitled to substantial and at times even controlling weight. *See* 20 C.F.R. § 404.1527(d)(2); Cotter, 642 F.2d at 704. The regulations explain that more weight is given to a claimant's treating physician because
>
> these sources are likely to be the medical professionals most able

F.3d 34, 41 (3d. Cir. 2001) (holding that the ALJ must consider all evidence including "medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others").

### 1. *Whether the ALJ Erroneously Evaluated the Medical Evidence*

As the finder of fact, the ALJ is required to review, properly consider and weigh all of the medical records provided concerning the claimant's claims of disability. Fargnoli, 247 F.3d at 42 (citing Dobrowolsky v. Califano, 606 F.2d 403, 406-07 (3d Cir.1979)). "In doing so, an ALJ may not make speculative inferences from medical reports." Plummer, 186 F.3d at 148 (citing Smith v. Califano, 637 F.2d 968, 972 (3d Cir.1981)). Indeed, the ALJ may not substitute his own opinions for the opinions of an examining physician. Id. (citing Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985)). When the medical evidence of records conflicts, "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Id. (citing Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir.1993)). Moreover, the ALJ must consider all the evidence and give some reason for dismissing the evidence he chooses to reject. Id. (citing Stewart v. Secretary of H.E.W., 714 F.2d 287, 290 (3d Cir.1983)).

Treating physicians' reports should be accorded great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir. 1987); 20 C.F.R. § 404.1527(d)(2).

> Under applicable regulations and the law of this Court, opinions of a claimant's treating physician are entitled to substantial and at times even controlling weight. *See* 20 C.F.R. § 404.1527(d)(2); Cotter, 642 F.2d at 704. The regulations explain that more weight is given to a claimant's treating physician because
>
> these sources are likely to be the medical professionals most able

>    to provide a detailed, longitudinal picture of [the claimant's]
>    medical impairment(s) and may bring a unique perspective to the
>    medical evidence that cannot be obtained from the objective
>    medical findings alone or from reports of individual examinations,
>    such as consultative examinations or brief hospitalizations.
>
> 20 C.F.R. § 404.1527(d)(2). Where a treating source's opinion on the nature and severity of a claimant's impairment is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," it will be given "controlling weight." Id.

Fargnoli, 247 F.3d at 43. The Commissioner will apply the following factors in determining the weight to be given to a treating physician: (1) the length of treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) whether the diagnosis is supported by the source's findings; (4) whether the diagnosis is consistent with the record as a whole; (5) whether the source is a specialist in any given area; and (6) any other reason to give a particular source weight in determining disability. 20 C.F.R. § 404.1527(d). A treating physician' opinion is normally entitled to substantial and at times even controlling weight. See 20 C.F.R. § 404.1527(d)(2).

Plaintiff argues that the ALJ misapplied the treating physician's rule and should not have given Dr. Francis' opinion greater weight. We disagree. The ALJ noted that from the onset date, Plaintiff did not seek regular mental health treatment other than to receive anti-depressant medication from his primary care doctor and an in-patient drug and alcohol rehabilitation program. (R. at 18, 297-99). The ALJ noted that Plaintiff's two-week in-patient treatment for chemical dependency at Turning Point was so successful that Plaintiff was released at a lower level of care. (R. 18, 243). Plaintiff consistently reported thereafter that Effexor and/or Cymbalta worked well for him. (R. 297, 292). At his frequent visits to Seneca Medical Center,

Plaintiff did not complain or report that he suffered from mood swings. The ALJ did not err in making inferences because he explained that Plaintiff did not seek any mental health treatment on a regular basis beyond receiving the anti-depressant medication from Seneca Medical Center. (R. 18-19). The Plaintiff did request a referral to Paoletta but was only seen there three times: once at an intake appointment, once to see Dr. Francis three months later, and a second appointment with Dr. Frances six months after that. (R. 345-50, 351-52, 353-64). Dr. Francis noted in February and August 2008 that Plaintiff's GAF score was 55, indicating at most moderate symptoms. (R. 116, 18-19, 345, 352).

We find that the ALJ was correct in relying on the opinion of the state agency psychologist Edward Jonas Ph.D., who reviewed the Plaintiff's records and opined that Plaintiff would have at most moderate limitations. (R. 18, 262-63, 275). Reliance on such opinions and professional assessments is proper under these circumstances. 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i). We concur with the ALJ's determination that the findings of Dr. Jonas were consistent with the evidence as a whole.

Finally, we note that the ALJ properly evaluated the consultative examiners' opinions because their assessments conflicted with the overall weight of the medical evidence, not solely because Plaintiff had not sought regular mental health treatment, as Plaintiff argues. 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6). The record is clear that Plaintiff reported improvement with his medication and also that he did not report mood swings on a regular basis to his treating doctors. The consultative examiners did not have a sufficient treatment relationship with Plaintiff and thus, treating source weight should not be given them. 20 C.F.R. 404.1502, 416.902. The ALJ complied with the regulations in affording the consultative

examiners' opinions less weight.

### 2. *Whether the ALJ erroneously rejected Plaintiff's evidence concerning his activities of daily living and improperly determined Plaintiff's RFC*

In addition to considering the medical evidence, the ALJ must consider non-medical evidence offered by the claimant, including evidence of his limitations. Smith v. Califano, 637 F.2d 968, 972 (3d Cir. 1981). However, a claimant's subjective complaints must be supported by objective medical evidence. 20 C.F.R. §1416.929(c). "The authority to evaluate the credibility of [the claimant] concerning pain and other subjective complaints is reserved for the ALJ." Gilmore v. Barnhart, 356 F.Supp.2d 509, 513 (3d Cir. 2005) (citations omitted). While the ALJ must give a claimant's subjective complaints "serious consideration," Powell v. Barnhart, 437 F.Supp. 2d 340, 342 (E.D. Pa. 2006) (citing Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002)), "the ALJ may reject a claimant's complaints if he does not find them credible." Id. (citing Schaudeck v. Commissioner of Social Security, 181 F.3d 429, 433 (3d Cir. 1999)); Hirschfield v. Apfel, 159 F.Supp. 2d 802, 811 (E.D. Pa. 2001)(citing Capoferri v. Harris, 501 F.Supp. 32, 37 (E.D. Pa. 1980), aff'd 649 F.2d 858 (3d Cir. 1981); Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974), cert. denied, 420 U.S. 931 (1975)) (holding that the ALJ may reject a claimant's subjective complaints of "disabling pain if he affirmatively addresses the claim in his decision, specifies the reason for rejecting it, and has support for his conclusion in the record"). Moreover, "if supported by substantial evidence, the ALJ's credibility findings may not be disturbed upon appeal." Hirschfield, 159 F.Supp. 2d at 811 (citing Van Horn v. Schweiker, 717 F.2d 871, 871 (3d Cir.1983); Smith v. Califano, 637 F.2d 968, 972 (3d Cir.1981); Baerga, 500 F.2d at 312).

Because the ALJ affirmatively addressed Plaintiff's complaints of disabling symptoms,

specified his reasons for rejecting those claims and supported his rejection with evidence of record, the Court finds that he properly evaluated all of the evidence. Baerga, 500 F.2d at 312.

Plaintiff further argues that the ALJ should have more specifically addressed the statements from Plaintiff's ex-wife and girlfriend. We find that the ALJ properly considered all the evidence and was not required to specifically discuss each letter from these non-medical sources, see SSR 06-03p; such evidence was cumulative of plaintiffs testimony which was rejected on the basis of lack of credibility and no doubt would have been rejected for the same reason. (R. 14-21, 26-45). Remand would not change the outcome. Rutherford v. Barnhart, 399 F.3d 546, 553 (3d. Cir. 2005).

### *Conclusion*

Based on the foregoing, Plaintiff's motion for summary judgment is denied and Defendant's motion for summary judgment is granted and the decision of the ALJ is therefore affirmed. . An appropriate order follows.

Maurice B. Cohill, Jr.
Senior United States District Judge

Dated: September 26, 2011